UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MICHAEL SCOTT MCLAUGHLIN | CIVIL ACTION |
| VERSUS | NO: 17-7604 C/W 17-7836 |
| BANCORPSOUTH INSURANCE SERVICES, INC. | SECTION: "A" (5) |

## ORDER AND REASONS

The following motions are before the Court: **Second Motion for Partial Summary Judgment (Rec. Doc. 39)** filed by Michael Scott McLaughlin; **Motion for Summary Judgment (Rec. Doc. 46)** filed by BancorpSouth Insurance Services, Inc. Both motions are opposed. The motions, submitted on December 13, 2017, and January 24, 2018, are before the Court on the briefs without oral argument.

### I. Background

This dispute arises out of Michael Scott McLaughlin's resignation from Bancorp Insurance Services, Inc. (Bancorp or BXSI), an insurance brokerage firm. McLaughlin had been employed with Bancorp since 2004 (and its predecessor since 1994). McLaughlin resigned from Bancorp on August 8, 2017, to accept employment with a competitor, Alliant Insurance Services, Inc. McLaughlin told Bancorp that he was leaving to open a Baton Rouge office for Alliant.

These consolidated actions pertain to a non-solicitation provision contained in McLaughlin's employment contract with Bancorp ("the Producer Agreement"). McLaughlin initiated suit in this Court in order to have the non-solicitation provision

declared invalid under Louisiana law. Bancorp then filed a new lawsuit in this Court to enforce the agreement and immediately moved for preliminary, injunctive relief. Bancorp's separate lawsuit was transferred to this Court and the two cases were consolidated. The Court has twice rejected Bancorp's attempt to obtain preliminary injunctive relief. (Rec. Docs. 9, 35).

McLaughlin now moves for partial summary judgment contending that the non-solicitation provision contained in the Producer Agreement is invalid and unenforceable under La. R.S. § 23:921. McLaughlin seeks partial summary judgment so that he can call on his former customers completely unfettered by the non-solicitation provision.[1]

Bancorp moves for summary judgment in cross fashion seeking a ruling that the Producer Agreement is valid and enforceable, and that the non-solicitation provision contained therein is enforceable.[2]

A jury trial is scheduled for May 7, 2018.

**II.　Discussion**

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed

---

[1] To date, McLaughlin has refrained from affirmatively soliciting business from his former clients, who are customers of Bancorp. Some of those customers have taken the initiative to reach out to McLaughlin, however.

[2] McLaughlin identifies his motion for summary judgment as one filed in Civil Action 17-7836, where he is the defendant, and Bancorp identifies its motion for summary judgment as having been filed in 17-7604, where it is the defendant. The Court attaches no significance to the procedural posture of each party on the pleadings of the specific action in which the moving party claims to be seeking for summary judgment. The parties' respective burdens on summary judgment are governed of course by Rule 56 but also by the substantive issues underlying the motions for summary judgment, and the burden of proof associated with the substantive law. In other words, neither party gains a strategic advantage by designating its motion as having been filed in one case versus the other.

in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

When faced with a well-supported motion for summary judgment, Rule 56 places the burden on the non-movant to designate the specific facts in the record that create genuine issues precluding summary judgment. *Jones .v Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). The district court has no duty to survey the entire record in search of evidence to support a non-movant's position. *Id.* (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1992); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988)).

Louisiana Revised Statute § 23:921 provides in relevant part:

> Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, ***except as provided in this Section, shall be null and void. However, every contract or agreement, or provision thereof, which meets the exceptions as provided in this Section, shall be enforceable.***
> . . . .
> Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment . . . .

La. R.S. § 23:921(A)(1), (C) (emphasis added).

The statute defines the limited circumstances under which a noncompetition or non-solicitation clause may be valid in the context of certain enumerated business relationships. *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 808 So. 2d 294, 298 (La. 2001) (citing *Louisiana Smoked Prods., Inc. v. Savoie's Sausage & Food Prods.*, 696 So. 2d 1373, 1379 (La. 1977)). Because such covenants are in derogation of the common right, they are strictly construed against the party seeking their enforcement. *Id.* (citing *Hirsh v. Miller*, 187 So. 2d 709, 714 (La. 1966); *Turner Prof. Servs. v. Broussard*, 762 So. 2d 184, 185 (La. App. 1st Cir. 2000)). Under Louisiana law, an ambiguous contractual provision must be interpreted against the party who furnished its text. *Armstrong Airport Concessions v. K-Squared Rest., LLC*, 178 So. 3d 1094, 1106 (La. App. 4th Cir. 2015) (citing La. Civ. Code art 2056; *Pollard v. Schiff*, 161 So. 3d 48, 55 (La. App. 4th Cir. 2015)).

Section 13 of the Producer Agreement, entitled Non-Solicitation, states:

> For and in consideration of the employment agreement and the considerations detailed in the recitals . . . employee agrees that for a period of two (2) years following the termination of his employment hereunder, employee shall not within the parishes of [all 64 parishes in the State of Louisiana listed individually in alphabetical order] and for a period of two (2) years in the states of Texas, Arkansas, Tennessee, Georgia, Alabama, Florida, Mississippi, Kentucky and Oklahoma: solicit any customer of BXSI [] for the purpose of a sale of any type of policy of insurance; assist any other person or entity in soliciting any customer of BXSI [] for the purpose of a sale of a policy of insurance; participate in the sale of any policy of insurance to any customer of BXSI [] or provide financial services or products to any customer of BXSI to whom such services or products had previously been provided to those customers by BXSI [] but only with respect to those parishes and states in which BXSI is at that time carrying on a like business therein.

(Rec. Doc. 1-1 at 8-9).

On its face, this non-solicitation agreement does not conform to the statutory requirements of § 23:921(C) because it is geographically overbroad. The agreement purports to prohibit activity in the entirety of the states of Texas, Arkansas, Tennessee, Georgia, Alabama, Florida, Mississippi, Kentucky and Oklahoma, without specifying the parishes (or counties) or municipalities where the prohibitions should apply.

Responding to this problem, Bancorp contends that the current state of Louisiana law reflects a willingness by the courts to excise overly broad geographical references and to enforce the remainder of the agreement. Also, Bancorp stresses that it does not seek to enforce the non-solicitation agreement outside of Louisiana.

The Louisiana Supreme Court has recognized that an overly broad non-solicitation agreement need not be declared null and void in its entirety when a severability clause permits the "offending language" to be excised from the agreement. *See SWAT 24,* 808 So. 2d at 308-09. The Producer Agreement does contain a

severability clause at Section 16. That Section states:

> Each provision of this Agreement is intended to be severable. In the event that any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable, the same shall not affect the validity or enforceability or any other provision of this Agreement, but this Agreement shall be construed as if such invalid, illegal or unenforceable provisions had never been contained herein, provided, however, that no provisions shall be severed if it is clearly apparent under the circumstances that the parties would not have entered into this Agreement without such provision.

(Rec. Doc. 1-1 at 9).

McLaughlin argues that the literal application of the severability clause would not allow for the rewriting or removal of sentences or particular words or phrases but rather would require the deletion of entire sections of the Producer Agreement. Thus, according to McLaughlin, the severability clause would operate to remove Section 13 (the non-solicitation agreement) in its entirety from the Producer Agreement.

McLaughlin is correct in observing that the language of the severability clause is important to the question of whether excising invalid language from Section 13 is in keeping with the parties' intent. But while the cases that Bancorp relies upon did involve more precisely worded severability clauses, the Court is persuaded that the severability clause in the Producer Agreement is sufficient for the purpose of excising the invalid and unenforceable portions of the non-solicitation clause. The separate numbered paragraphs of the Producer Agreement in their entirety are called "sections," (Rec. Doc. 1-1 at 8), not provisions. The severability clause refers to "provisions" being severable, which implies severability within sections. Because the Court is persuaded that Section 13 of the Producer Agreement is invalid, illegal, and unenforceable as to Texas, Arkansas, Tennessee, Georgia, Alabama, Florida, Mississippi, Kentucky and Oklahoma,

the Court will treat those "provisions" as severed from Section 13. The Court therefore rejects McLaughlin's contention that the presence of these blatantly overbroad geographic references renders Section 13 void on its face.[3]

Finally, McLaughlin argues that Section 13 is overbroad and vague insofar as it purports to restrict him from providing financial services or products to BXSI's customers. McLaughlin contends that Bancorp does not sell financial products and that the Producer Agreement does not define the term "financial services or products," which is extraordinarily broad and could mean a multitude of things.

The Court is persuaded that this argument has merit based on the contention that the term "financial services or products" is not defined in the Producer Agreement. As McLaughlin points out, financial products may include a host of services such as bank accounts, mortgages, stocks, bonds, stock options, commodity futures, credit swap agreements, and the list goes on. The Producer Agreement is vague and ambiguous in this vein and therefore is unenforceable as to "financial services or products," whatever that term was intended to mean.[4] *See, e.g., Paradigm Health System, LLC v. Faust*, 218

---

[3] It is apparent that Bancorp seeks to avoid the issue of whether Section 13 of the Producer Agreement is enforceable outside of Louisiana. But the cases that allow for "blue penciling" of non-solicitation agreements are based on the operation of a contractual severability clause that allows a court to sever or excise portions of the non-solicitation agreement. The contractual terms of the severability clause in Section 16 govern here, and Section 16 expressly conditions severability on a finding of invalidity, illegality, or unenforceability. That the attempt to limit McLaughlin's post-employment activities in Texas, Arkansas, Tennessee, Georgia, Alabama, Florida, Mississippi, Kentucky and Oklahoma is unenforceable under Louisiana law is beyond cavil. The Producer Agreement is expressly governed by Louisiana law, and Section 22's Choice of Law provision as to other states may be questionable in light of La. R.S. 23:921(A)(2).

[4] McLaughlin also posits that Bancorp does not really sell financial products, a contention that Bancorp disputes. Bancorp, as the party seeking to enforce the non-solicitation agreement has the burden of proof on this issue not McLaughlin. The Court does not find

So. 3d 1068 (La. App. 1st Cir. 2017); *H.B. Rentals, LC v. Bledsoe*, 24 So. 3d 260 (La. App. 3rd Cir. 2009); *Brand Ener. Solutions, LLC v. Gilley*, No. 16-1025, 2017 WL 238917 (W.D. La. Jan. 18, 2017). But as with the overly broad geographic references, this provision does not render Section 13 void on its face in light of the Producer Agreement's severability clause.

Based on the foregoing, McLaughlin's motion for partial summary judgment is therefore granted in part and denied in part.

As to Bancorp's motion for summary judgment, which is concerned solely with the enforcement of the non-solicitation agreement as to Louisiana, Bancorp argues that Section 13 of the Producer Agreement is enforceable in all 64 parishs of Louisiana, which are exhaustively listed in the agreement. Bancorp contends that Section 13 is not geographically overbroad per se simply because it lists all of the parishes in Louisiana. Bancorp points out that even though the entirety of the state of Louisiana is implicated via the listing of all parishes, Section 13 expressly restricts itself only to those parishes where Bancorp is at the time of the employee's termination, "carry[ing] on a like business therein," a phrase lifted from La. R.S. § 23:921(C). Bancorp contends that Section 13 is actually narrowly tailored because it only precludes McLaughlin from doing business with Bancorp's customers in those parishes where it actually engages in business, which just happens to be every parish in Louisiana.[5]

---

the Choppin Declaration particularly elucidating as to Bancorp Insurance Services, Inc.'s involvement in the sale of financial products and services (Rec. Doc. 18-3 ¶ 4), and Bancorp's reliance on McLaughlin's deposition testimony as to this point is misplaced and unconvincing. This point is moot, however as the Court finds the provision as to the sale of financial services and products to be otherwise unenforceable.

[5] The Court questions whether Section 13 is as narrowly tailored as Bancorp suggests.

McLaughlin argues that Section 13 is contrary to a prohibition deriving from some Louisiana appellate court cases wherein the courts have refused to enforce non-competition agreements that purported to impose restrictions based on the unpredictable status of future events. McLaughlin also argues that the phrase "carrying on a like business" is ambiguous as applied in this case.

McLaughlin's arguments are not so easily dismissed. Bancorp's goal in including Section 13 in the Producer Agreement was obvious—Bancorp did not want employees like McLaughlin to take Bancorp's Louisiana customers when leaving to pursue other employment opportunities. The Producer Agreement recognizes that an employee in McLaughlin's positon would personally cultivate relationships with clients, who pursuant to the express terms of the Producer Agreement, were Bancorp's customers, for the mutual benefit of the parties. If Bancorp had simply named the state of Louisiana in its entirety instead of reciting all 64 parishes, as was the case with Texas, Arkansas, Tennessee, Georgia, Alabama, Florida, Mississippi, Kentucky and Oklahoma, then Section 13 of the Producer Agreement would be completely violative of La. R.S. § 23:921, and unenforceable as to Louisiana. No amount of contract reformation or severing would save it under that circumstance. To work around this problem Bancorp simply listed all of the parishes in the state. And to reduce the risk of being challenged for overreaching in violation of La. R.S. § 23:921, Bancorp added text from the statute to tether the prohibition to parishes where *at the time of the employee's departure*

---

Bancorp's submission at Rec. Doc. 18-5 contains a customer invoice record for Metairie, Louisiana. Under the statute, the municipality alone could have been restricted but Section 13 would purport to restrict the entirety of Jefferson Parish. Perhaps Bancorp has customers in the other municipalities of Jefferson Parish, which are many, but that is not clear.

Bancorp was carrying on a like business.[6]

Clearly, as McLaughlin points out, Section 13 is tied to events taking place in the future. The Producer Agreement was executed on May 14, 2003, and consistent with the text of Section 13, all of Bancorp's evidence is geared toward establishing the parishes where it was "carrying on a like business" in 2017 when McLaughlin left Bancorp. In other words, the de facto prohibitions deriving from Section 13 might change based on when McLaughlin resigned, and in 2003 when McLaughlin agreed to the Producer Agreement, he had no way to determine the geographical limits of Section 13. *See Garcia v. Banfield Pet Hosp., Inc.*, 35 So. 3d 261 (La. App. 1st Cir. 2010); *Medivision, Inc. v. Germer*, 617 So. 2d 69 (La. App. 4th Cir. 1993).

The Court's greater concern, however, lies with the phrase "carrying on a like

---

[6] In an unpublished decision, which is not precedent in this circuit, *see* Fifth Circuit Rule 47.5.4, the panel held that a non-competition agreement was not overbroad per se simply by virtue of the fact that it recited all 64 parishes in Louisiana. *Arthur J. Gallagher & Co. v. Babcock*, 339 Fed. Appx. 384, 387 (5th Cir. 2009) (unpublished). The reasoning driving that decision was that it was possible for a company to "conduct a like business" in all 64 parishes, and the plain language of La. R.S. § 23:921(C) suggests the necessity of a factual inquiry to determine whether the employer is carrying on a like business in those parishes. *Id.* at 387-88.

The Court does not interpret this decision, along with the latter decision in the case, *Arthur J. Gallagher & Co. v. Babcock*, 703 F.3d 284 (5th Cir. 2012) (holding that the agreement was not rendered unenforceable even though the employer was only doing business in nine parishes), as condoning an employer's unchecked recitation of every parish in the state as a means to circumvent the letter and intent of La. R.S. § 23:921, which allows for a narrowly tailored/least restrictive means employment agreement. The Court's concern is that nothing suggests that Bancorp was actually carrying on a like business in all 64 parishes in 2003 when it listed them in Section 13. Taken to the extreme, a party could in this manner simply list every parish, county, or municipality in numerous states and then foist upon the courts the burden of conducting a factual inquiry to determine where the agreement is enforceable. Employers would be free routinely to present employees with grossly overbroad covenants not to compete. *Team Envir. Servs., Inc. v. Addison*, 2 F.3d 124, 127 (5th Cir. 1993). As one judge has observed, "it is the job of the parties, not the Court, to write a legally valid contract" *O'Sullivan v. Gupta*, No. 17-609, 2017 WL 3438349, at *6 (E.D. La. Aug. 10, 2017) (Africk, J.).

business." The agreement does not define what it means to carry on a like business and Bancorp is mistaken in believing that the phrase is unambiguous per se simply because it was lifted from the statute. In Louisiana, Bancorp is headquartered in Baton Rouge, Louisiana, where McLaughlin worked. Bancorp does not suggest that it carries on business in any other parish in the like manner that it does so in East Baton Rouge Parish. So in order to give effect to Section 13, Bancorp has defined "carrying on a like business" in another parish, as the seemingly less restrictive standard of engaging in business in that parish, which based on Bancorp's evidence, is met simply by selling insurance to a customer who happens to have an office in that parish. To the Court, it seems that the requirement that Bancorp carry on a like business in any given parish requires more than the happenstance that it has a customer who receives invoices at a mailing address located in that parish.

The potential ambiguity in Section 13 is further borne out by Bancorp's current characterization of Section 13 as a client restriction agreement, which the Court is persuaded correctly characterizes the substance of Section 13's prohibitions, and what Bancorp was attempting to do when it drafted the agreement. The Court gathers that Bancorp's sole concern with enforcing Section 13 is preventing McLaughlin from taking the customers that he serviced for Bancorp with him to Alliant. The Court is persuaded that Louisiana law allows for such a restriction in some measure. The geographical restrictions of Section 13 may not be particularly important to Bancorp but for the requirement of mechanical adherence to La. R.S. § 23:921, which is essential. Yet in prior briefing Bancorp urged an interpretation of the geographical limitations of Section 13 that was tantamount to a situs-based restriction foreclosing from which parishes in

Louisiana McLaughlin could physically be present if attempting to solicit Bancorp's customers. (Rec. Doc. 18-1 at 19). This interpretation does not seem consistent with Bancorp's current position regarding client-based restrictions.

McLaughlin also challenges the aspect of Section 13 that purports to preclude him from participating in the sale of any policy of insurance to any customer of Bancorp. Although this provision does not involve affirmative "solicitation" and therefore is really a non-competition provision, McLaughlin points out that the title of Section 13 is "Non-Solicitation," so all of the prohibitions of Section 13 must necessarily be interpreted as including affirmative solicitation of customers. McLaughlin also contends that the provision does not comport with La. R.S. 23:921(C) because this particular type of restriction is not expressly covered in the statute.

The Court is persuaded that the latter argument is foreclosed by *Arthur J. Gallagher & Co. v. Babcock*, 703 F.3d 284 (5th Cir. 2012). That decision clarifies that the restriction on participating in the sale of any policy of insurance to any customer of Bancorp is correctly classified as a noncompetition restriction allowable under La. R.S. 23:921(C). *Id.* at 290.

As to McLaughlin's argument regarding Section 13's title which refers only to solicitation, interestingly in *Arthur J. Gallagher & Co. v. Babcock*, the Fifth Circuit explained that the section titles in the contract at issue served to put the defendant-employees on notice that the provisions barred more than mere solicitation. 703 F.3d at 290. So section titles are not irrelevant—the question is whether the narrow wording of Section 13's title creates any ambiguity with the text in that section. The Court is persuaded that regardless of the level of sophistication of the party signing the

agreement, the pithy title of Section 13 could very well suggest that the prohibition on participating in the sale of insurance to Bancorp's customers applies to situations where affirmative solicitation has occurred. Moreover, this phrase, unlike the one below it in Section 13, does not refer to customers of Bancorp to whom services had previously been provided. So if a customer voluntarily chooses to terminate its relationship with Bancorp, that person would no longer be "any customer of BXSI," and under the literal terms of Section 13 McLaughlin would not be precluded from doing business with that person so long as McLaughlin had not affirmatively solicited the business.

Due to the concerns explained above, the Court declines to grant summary judgment to Bancorp at this time. But McLaughlin would be well advised to continue to refrain from soliciting Bancorp's customers for any purpose, including financial services and products, until this litigation is concluded.7

Finally, the Court turns to the validity of the Producer Agreement, which McLaughlin seeks to dissolve if and only if the Court does not declare the non-solicitation provision, found at Section 13 of the agreement, to be unenforceable. (Rec. Doc. 1, Complaint ¶¶ 26-27). This claim is premised on the contention that Bancorp breached the agreement in 2017 by withholding commissions to cover a customer's failure to pay its premium. (*Id.*).

Article 2013 of the Louisiana Civil Code gives the obligee a right to judicial

---

7 Because the enforceability of the non-solicitation agreement turns on questions of law and not fact, Bancorp may very well file another motion for summary judgment to address some of the problems that the Court identified above with respect to enforcing the prohibition to affirmatively solicit Louisiana customers. But Bancorp is forewarned that incorporating prior briefing and exhibits by reference will not be allowed. Any new motion should focus on the problems that the Court has identified, and must have attached to it any referenced exhibits even if filed elsewhere in the record.

dissolution when the obligor fails to perform. A contract may not be dissolved, however, when the obligor has rendered a substantial part of the performance and the part not rendered does not substantially impair the interest of the obligee. La. Civ. Code art. 2014.

Bancorp argues that McLaughlin cannot obtain judicial dissolution because Bancorp rendered substantial performance under the agreement. Bancorp points out that the dispute as to unauthorized withholding of commissions is based on a deduction of approximately $5000 (out of cumulative compensation over the years of $4,150,000). Bancorp also contends that McLaughlin actually agreed to forego the $5,000 because of the specific customer involved in the unpaid premium. Bancorp posits that McLaughlin is not really concerned about the $5000 but rather cites the failure to pay solely as a means to escape the non-solicitation provision.

McLaughlin disputes that he agreed to the deduction, and contends that this issue of fact is genuine, and therefore forecloses summary judgment on the issue of whether Bancorp breached the Producer Agreement first.

Consent as to the withholding may very well be a disputed issue of fact but the Court is persuaded that it is not a material one. Even if Bancorp breached the Producer Agreement in conjunction with the $5000 payment, that does not, as a matter of law, support judicial dissolution of the agreement. Bancorp substantially performed under the agreement.

Based on the foregoing, Bancorp's motion for summary judgment is therefore granted in part and denied in part.

In sum, while McLaughlin may avoid some aspects of the non-solicitation

agreement, he cannot avoid it altogether. The Court therefore urges the parties to be reasonable and confect a consent agreement to give meaningful effect to the non-solicitation provision.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Second Motion for Partial Summary Judgment (Rec. Doc. 39)** filed by Michael Scott McLaughlin is **GRANTED IN PART AND DENIED IN PART;**

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 46)** filed by BancorpSouth Insurance Services, Inc. is **GRANTED IN PART AND DENIED IN PART.**

February 22, 2018

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE